UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUA CALIENTE BAND OF <br> CAHUILLA INDIANS, <br> 5401 Dinah Shore Drive, <br> Palm Springs, CA 92264 <br><br> AK-CHIN INDIAN COMMUNITY, <br> 42507 W. Peters and Nall Road <br> Maricopa, AZ 85138-3940 <br><br> ARAPAHO TRIBE OF THE WIND <br> RIVER RESERVATION <br> 533 Ethete Road <br> Ethete, WY 82520, <br><br> CHEROKEE NATION <br> P.O. Box 1533 <br> Tahlequah, OK 74465, <br><br> CHICKASAW NATION <br> 520 E. Arlington <br> Ada, OK 74820, <br><br> CHOCTAW NATION OF <br> OKLAHOMA <br> P.O. Box 1210 <br> Durant, OK 74702 <br><br> SNOQUALMIE INDIAN TRIBE, <br> 9571 Ethan Wade Way SE, <br> Snoqualmie, WA 98065 <br><br> YUROK TRIBE OF THE YUROK <br> RESERVATION <br> 190 Klamath Boulevard <br> Klamath, CA 95548, <br><br>       Plaintiffs, <br><br>   v. <br><br> STEVEN MNUCHIN, in his official <br> Capacity as the Secretary of the United <br> States Department of the Treasury, | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. 1:20-cv-1136 (APM) |

| | |
|---|---|
| 1500 Pennsylvania Ave., N.W.        ) | |
| Washington, D.C. 20220                   ) | |
|                                                              )  | **FIRST AMENDED COMPLAINT** |
|                                                              ) | |
| Defendant.                                  ) | |

Plaintiffs the Agua Caliente Band of Cahuilla Indians, Ak-Chin Indian Community, Arapaho Tribe of the Wind River Reservation, Cherokee Nation, Chickasaw Nation, Choctaw Nation of Oklahoma, Snoqualmie Indian Tribe, and Yurok Tribe of the Yurok Reservation ("Plaintiffs") federally recognized Indian Tribal governments, by and through counsel, state and allege as follows:

## INTRODUCTION

1. Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, which President Trump signed into law on March 27, 2020, to respond to the devastating and ongoing impacts of the COVID-19 pandemic. Title V of the CARES Act amends the Social Security Act (42 U.S.C. §§ 301, *et seq*.), and appropriates $150 billion for fiscal year 2020 (Title V funds) for "payments to States, Tribal governments, and units of local government." 42 U.S.C. § 801(a)(1). Of that sum, $8 billion is "reserve[d] . . . for making payments to Tribal governments." *Id.* § 801(a)(1).

2. Congress, responding to the urgent situation throughout Indian Country and the desperate need for these resources, mandated that the Secretary of the United States Department of the Treasury (Secretary) disburse Title V funds to Tribal governments "not later than 30 days after" March 27, 2020, the date of enactment of this section—in other words, by April 26, 2020. *Id.* § 801(b)(1).

3. Plaintiffs are each federally recognized Indian tribes, acting through their Tribal governments, who qualify to receive Title V funds and have submitted the requisite certifications

and information to the Secretary as requested by the Secretary to effectuate timely distribution of such funds.

4.     As of today, May 3, 2020, the Secretary has violated his clear non-discretionary duty to act in accordance with the CARES Act mandate by failing to disburse Title V funds to Tribal governments, including the Plaintiffs, within the timeframe Congress determined. Plaintiffs are in dire need of the Title V funds, as Congress recognized, to support the necessary and increased expenditures caused by the COVID-19 pandemic. Plaintiffs' injuries are ongoing, worsening, and irreparable such that if the Secretary does not immediately disburse the emergency relief funds, Plaintiffs will be forced to curtail essential governmental services and furlough or lay off a substantial number of employees. Plaintiffs request that the Court order the Secretary to immediately disburse Title V funds as directed by the CARES Act and this Court's Order, issued on April 27, 2020 in *Confederated Tribes of the Chehalis Reservation, et al v. Mnuchin*, Case No. 1:20-cv-01002-APM (Doc. 36) ("April 27, 2020 Order").

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1361, and 1362.

6.     Plaintiffs Agua Caliente Band of Cahuilla Indians, Ak-Chin Indian Community, Arapaho Tribe of the Wind River Reservation, Cherokee Nation, Snoqualmie Indian Tribe, and Yurok Tribe of the Yurok Reservation have governing bodies duly recognized by the Secretary of the U.S. Department of the Interior.  The Plaintiffs assert claims arising under the Constitution and laws of the United States, including the Administrative Procedures Act, 5 U.S.C. §§ 701-706 and the Mandamus Act, 28 U.S.C. § 1361.

7. This suit alleges that the Secretary is failing to act in accordance with a mandatory, non-discretionary duty imposed by the CARES Act. Accordingly, Defendant has consented to suit under the Administrative Procedure Act, 5 U.S.C. § 702.

8. The allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the Defendant, the Secretary of the U.S. Department of the Treasury, is an officer of the United States and because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and the Defendant maintains his principal place of business in this District.

## THE PARTIES

10. Plaintiff tribes are federally recognized Indian tribal government whose governing bodies are recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).

11. The Agua Caliente Band of Cahuilla Indians exercises sovereign powers of self-governance and jurisdiction over the Agua Caliente Reservation, which was set aside by Executive Orders in 1876 and 1877 and is located within the exterior boundaries of the State of California. Agua Caliente brings this action through its Tribal government on its own behalf and on behalf of its members.

12. The Ak-Chin Indian Community exercises sovereign powers of self-governance and jurisdiction over the Ak-Chin Indian Community Reservation, which was set aside by Executive Order in 1912 and is located within the exterior boundaries of the State of Arizona. Ak-

Chin brings this action through its Tribal government on its own behalf and on behalf of its members.

13. The Arapaho Tribe of the Wind River Reservation exercises powers of self-governance and jurisdiction. The Arapaho Tribe of the Wind River Reservation is a signatory to the Fort Laramie Treaties of 1851 and 1868, their Reservation is shared with the Eastern Shoshone Tribe of the Wind River Reservation and is located within the exterior boundaries of Wyoming. The Arapaho Tribe of the Wind River Reservation brings this action through its Tribal government on its own behalf and on behalf of its members.

14. The Cherokee Nation is a federally recognized Indian tribe located in Oklahoma, and with over 383,000 citizens is the largest Indian tribe in the United States. In the 1830s, the United States forced the Nation to remove from its Georgia homeland to present-day Oklahoma. By the mid-19th century, most members of the Cherokee Nation had been forcibly moved to the Indian Territory in what is today eastern Oklahoma. Treaties between the United States and the Nation entered in 1835, 1846 and 1866 defined the boundaries of the Nation's territory and guaranteed the Nation's sovereign powers of self-governance and jurisdiction over those lands. Cherokee Nation brings this action through its Tribal government on its own behalf and on behalf of its members.

15. The Chickasaw Nation, a federally recognized Indian tribe of 70,934 citizens, is signatory to numerous treaties with the United States, including the Treaty of Hopewell, 7 Stat. 24 (Jan. 10, 1786); the Treaty of Doaksville, 11 Stat. 573 (Mar. 24, 1837); the Treaty of Washington, 11 Stat. 611 (Feb. 21, 1856); and the Treaty of Washington, 14 Stat. 769 (Jun. 28, 1866). Since its forced removal from its aboriginal homeland in the 1830s and 40s, the Chickasaw Nation occupies a treaty homeland in present-day Oklahoma and operates pursuant to its Constitution, first ratified

by its citizens in 1850 and reformed and re-ratified in 1983. The Chickasaw Nation brings this action through its Tribal government on its own behalf and on behalf of its members.

16. The Choctaw Nation of Oklahoma is a federally recognized tribe located in Oklahoma with 198,358 tribal members and a Reservation comprised of 6,952,960 acres of land. It exercises sovereign powers of self-governance and jurisdiction over the Choctaw Nation of Oklahoma Reservation pursuant to the Constitution of the Choctaw Nation of Oklahoma of 1983. Choctaw Nation brings this action through its Tribal government on its own behalf and on behalf of its members.

17. The Snoqualmie Indian Tribe (sdukwalbixw in the Lushootseed language), exercises sovereign powers of self-governance and jurisdiction over the Snoqualmie Reservation. The Snoqualmie Indian Tribe is a signatory to the Treaty of Point Elliott of 1855. The Snoqualmie Indian Reservation was proclaimed on October 20, 2006, and is located within the exterior boundaries of the State of Washington. The Snoqualmie Indian Tribe brings this action through its Tribal government on its own behalf and on behalf of its members.

18. The Yurok Tribe of Yurok Reservation exercises powers of self-governance and jurisdiction. The present day Yurok Reservation was established by partition pursuant to the Hoopa-Yurok Settlement Act of 1988 and is located in the exterior boundaries of California. The Yurok Tribe of the Yurok Reservation brings this action through its Tribal government on its own behalf and on behalf of its members.

19. Defendant Steven Mnuchin, sued in his official capacity as the Secretary of the U.S. Department of the Treasury, is charged by Congress with distributing Title V funds to Tribal governments no later than April 26, 2020. Defendant's failure to distribute Title V funds by the

date mandated in the CARES Act violates the plain language of the Act and threatens the Plaintiffs with imminent irreparable injury, as set forth in greater detail below.

## FACTUAL BACKGROUND

20. Plaintiff Tribes each provide a wide array of governmental services throughout their Reservations and for the benefit of their Tribes. Some of the services the Plaintiff Tribes provide include, but are not limited to, healthcare, food distribution, heating assistance, education, planning and development services, environmental regulatory services, building inspection services, food and safety regulatory services, power services, water and water treatment, police, fire, social services, housing, judicial services, health and welfare services, educational programs, and social and cultural preservation facilities and programs.

21. Plaintiffs have each declared Tribal States of Emergency and responsibly have closed their tribal enterprises in response to the COVID-19 pandemic. The closing of these enterprises has eliminated the Tribes' sources of governmental revenue that permit each ordinarily to provide essential government services and employee salaries and benefits.

22. Tribal Plaintiffs have taken emergency protective measures and incurred substantial unbudgeted expenses to address the COVID-19 crises. For example, Plaintiff Tribes have procured additional personal protective equipment (PPE) for distribution to Tribal members and Tribal staff; procured and distributed water, toilet paper and food to Tribal members; increased spending on cleaning and sanitation supplies, including washing stations and thermometers, tents for testing facilities, medical equipment, testing supplies, public communication materials; services to tribal elders and food distribution programs; incurred additional IT and professional services related expenses; and incurred additional security expenses to secure closed facilities. These emergency services are unbudgeted expenses. Congress understood that tribes would incur these COVID-19 related expenditures and enacted Title V of the CARES Act precisely to provide

additional resources to tribes, including Plaintiff Tribes, so as to ensure that they had the resources for such expenditures.

23. If the Plaintiff Tribes do not receive Title V funds immediately, Plaintiffs will be forced to take additional measures such as reducing and curtailing additional essential governmental services or laying off or furloughing their employees.

24. The increased and necessary unbudgeted expenditures by the Plaintiff Tribes resulting from the devastating impacts of the COVID-19 pandemic are exactly the costs that Congress intended the Title V funds to cover. *See* 42 U.S.C. § 801(d).

25. This Court recently held, consistent with the plain statutory language, that the CARES Act "requires the Secretary [] to disburse the Title V funds to the Tribal governments 'not later than 30 days after' March 26, 2020, the date of enactment of this section – that is, by April 26, 2020." (Court's April 27, 2020 Order, citing 42 U.S.C. § 801(b)(1).)

26. On April 13, 2020, the Secretary published on the Treasury Department's website a form titled "Certification for Requested Tribal Data" ("Certification"), which requested certain data to effectuate disbursement of the CARES Act funds.

27. Plaintiffs each submitted the requisite Certification and other information before the Secretary's April 17, 2020 deadline. The Defendant possesses all of the requisite information needed to disburse the funds to the Plaintiffs, and has had such information for nearly two weeks. Nevertheless, as of the date of this filing, May 3, 2020, Defendant has failed to disburse the funds. Defendant's delay and inaction is in violation of a mandatory, non-discretionary duty imposed by the CARES Act.

28. Any further delay in funding will force Plaintiffs to curtail essential governmental services and furlough or lay off a substantial number of employees.

29. This Court can redress the Plaintiffs' injuries by awarding declaratory, injunctive, and mandamus relief requiring Defendant to disburse the Title V funds within 24 hours in a manner consistent with the CARES Act and this Court's April 27, 2020 Order.

**Count I – Declaratory, Injunctive, and Mandamus Relief under 28 U.S.C. § 2201-2202, 5 U.S.C. § 706, and 28 U.S.C. § 1361**

30. The Plaintiffs reallege and incorporate by reference all preceding paragraphs and allegations.

31. The APA authorizes judicial review of agency actions, including actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 702.

32. The APA provides that the reviewing Court shall compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

33. Under the Mandamus Act, a federal court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." 28 U.S.C. § 1361.

34. The CARES Act requires the Secretary to disburse Title V funds to Tribal governments "not later than 30 days after" March 27, 2020, the date of its enactment—in other words, by April 26, 2020. *Id.* § 801(b)(1). Plaintiffs are entitled to an order declaring the same and compelling Defendant through a mandatory injunction to disburse funds without further delay.

35. By failing to disburse the funds, Defendant is violating a clear, non-discretionary and mandatory duty to act as mandated by Congress through the CARES Act.

36. The Defendant's duty to disburse the funds within 30 days of enactment of the CARES Act is a plainly defined and peremptory duty.

37. In light of the clear statutory mandate, Defendant's inaction in failing to disburse the Title V funds amounts to inaction unlawfully withheld or unreasonable delayed.

38. The Plaintiffs are entitled to a preliminary injunction and mandamus relief requiring the Secretary to immediately disburse the Title V funds to the Plaintiffs in a manner consistent with the CARES Act and the Court's April 27, 2020 Order.

39. The Plaintiffs will suffer irreparable harm and have no other adequate remedy if Defendant continues to delay in disbursing the Title V funds.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

1. Enter a judgment pursuant to 28 U.S.C. § 2201 declaring that Defendant's failure to disburse Title V funds violates the CARES Act and amounts to agency action unlawfully withheld or unreasonably delayed under 25 U.S.C. § 706(1)(a).

2. Preliminarily order Defendant to disperse Title V funds to the Plaintiffs within 24 hours in a manner consistent with the CARES Act and this Court's April 27, 2020 Order.

3. Issue a writ of mandamus requiring Defendant to disperse the Title V emergency relief funds to the Plaintiffs within 24 hours in a manner consistent with the CARES Act and this Court's April 27, 2020 Order.

4. Award the Plaintiffs their reasonable attorney's fees, costs, and other such relief as the Court deems just and appropriate.

Dated this 3rd day of May, 2020.

Respectfully submitted,

 /s/ Keith M. Harper
Keith M. Harper, DC Bar No. 451956
Catherine F. Munson, DC Bar No. 985717
Mark H. Reeves, DC Bar No. 1030782

KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel:  202-508-5800
Fax:  202-508-5858

Rob Roy Smith (*pro hac vice* motion forthcoming)
WSBA No. 33798
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Tel: (206) 467-9600
Fax:  (206) 623-6793

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2020, I electronically filed the foregoing First Amended Complaint with the clerk of the Court using the CM/ECF system which will send notification of such filing to the parties registered in the Court's CM/ECF system.

In addition, a true and correct copy of the First Amended Complaint will be sent tomorrow by UPS overnight mail to the following:

>  Steven Mnuchin, Secretary
>  Department of the Treasury
>  1500 Pennsylvania Avenue, NW
>  Washington, DC 20220

I also emailed a copy of Plaintiffs' First Amended Complain to Jason Lynch, Jason.Lynch@usdoj.gov, based on the understanding that Mr. Lynch represents the United States in this matter.

                                                  /s/ Keith Harper