# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AGUA CALIENTE BAND OF CAHUILLA
INDIANS, et al.,

Plaintiffs,

v.

STEVEN MNUCHIN, in his official capacity as
Secretary of the Treasury,

Defendant.

Case No. 1:20-cv-1136-APM

## DECLARATION OF DANIEL KOWALSKI

I, Daniel Kowalski, hereby do state and declare as follows:

1. I currently serve as Counselor to the Secretary at the United States Department of the Treasury (Treasury). I am authorized to make this declaration and do so on the basis of both my personal knowledge and information made available to me in my official capacity.

2. I have been delegated the authority by the Secretary of the Treasury (Secretary) to perform the following disbursement-related functions as required under Title V of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act): (a) making payments under Title V of the CARES Act, and (b) certifying any payment instructions or executing any documents necessary to carry out the making of payments described above.

3. At the Secretary's direction, I manage the Treasury staff responsible for making payments under Title V of the CARES Act, and I act on behalf of Treasury to consult with the Department of the Interior as well as Tribal organizations, in accordance with Treasury's obligations under the statute.

4. Since April 6, 2020, I have hosted approximately three teleconferences every week with Treasury staff in order to provide updates to staff, receive updates from staff, and discuss various issues related to making payments to Tribal governments pursuant to Title V of the CARES Act. I also

have near-daily conversations with individual Treasury staff who require additional guidance for the work to progress.

5. On April 2 and April 9, 2020, I participated in telephonic Tribal consultations with tribal leaders that included approximately 1700 callers on each consultation. In addition, from March 31 to April 13, 2020, Treasury received approximately 440 written comments from Indian Tribes and stakeholders, of which I reviewed a substantial portion. I also reviewed summaries of all comments.

6. In order to perform the necessary analysis to allocate payments from the Coronavirus Relief Fund (the Fund) among Tribal governments, Treasury requested that each Tribe submit certain data about itself via Treasury's website in the form of a certification (OMB Approved No. 1505-0264) (Certification). The types of information Treasury requested in these Certifications included population figures, number of land acres held, employment data, and expenditure information for the most recently completed fiscal year. Treasury also requested that each Tribe submit payment information (i.e., information identifying the Tribal government as an eligible recipient and bank account information) (Payment Information) to allow Treasury to make payments.

7. Since the CARES Act became law on March 27, 2020, Treasury has been mindful of the statutory requirement that all payments from the Fund were to be made within 30 days, *i.e.*, by April 26, 2020. In fact, payments to non-Tribal governments, totaling $142 billion of the $150 billion appropriated to the Fund, were initiated no later than April 24, 2020. While making those payments, Treasury has also been mindful of another statutory obligation – that it determine an appropriate allocation of $8 billion among Tribal governments.

8. Treasury has encountered numerous issues with the Certifications and Payment Information received from Indian Tribes, including duplicated or triplicated submissions, missing submissions, or incomplete submissions, which has required — and continues to require — follow-up and outreach to have the records manually corrected.

9. Treasury has been working diligently to verify payment information and prepare data to run different models in order to determine the formula Treasury will use to allocate payments from the Fund among Tribal governments (the Allocation Formula) and, ultimately, to disburse payments accordingly. This process has also been hampered by the issues with the Certifications and Payment Information described above.

10. Treasury's dedication to preparing the Allocation Formula and making payments to Tribal governments from the Fund is reflected in the number of hours Treasury staff have worked since the enactment of the CARES Act on March 27, 2020, including working late into the evening and over weekends. Treasury estimates that approximately 2,200 hours have been spent on these efforts.

11. Since the initial filing for declaratory and injunctive relief by certain plaintiffs, I have taken part in numerous meetings with various Treasury officials regarding the litigation. Other Treasury staff, including economists and operations personnel, have similarly spent time responding to questions from and providing information to Treasury and Department of Justice attorneys related to this litigation.

12. Treasury is doing everything reasonably possible to disburse money to Tribal governments quickly and accurately.

13. Treasury has determined to distribute 60 percent, or approximately $4.8 billion, of the $8 billion reserved for Tribal governments immediately based on population.

14. On May 5, 2020, Treasury began making payments to Tribal governments based on the population component of the Allocation Formula.  As of the morning of Wednesday, May 6, 2020, approximately $3.4 billion of payments have been made, including payments to each of the eight plaintiffs in this case.

15. Treasury is working diligently to distribute the balance of the appropriation (40 percent of the $8 billion reserved for Tribal governments) based on employment data and expenditures data. In order to do so, and cognizant of the Certification issues discussed above, Treasury intends to request additional data in the coming days from Tribal governments that is reasonably verifiable and is in a format that allows Treasury to model the data for the Allocation Formula.

16. Treasury staff are working to finalize the employment and expenditure components of the Allocation Formula, but payments based on employment and expenditure data will not be able to be made until after data on employment and expenditures are received, reasonably verified, and accounted for in the allocation formula.  Treasury will continue to work diligently to complete the payments as soon as practicable, consistent with the agency's efforts to distribute the amounts fairly and accurately.

17. During the period from March 27 (the date on which Treasury staff began making payments to Tribal governments) to May 5, 2020, the same staff was also determining processes for disbursing the Fund's other $142 billion to States, the District of Columbia, territories, and units of local government; assembling relevant data from the Census Bureau; calculating the payment amounts for these recipients; receiving and processing the statutorily-required certifications from local governments eligible to receive payments; and developing guidance for recipients of payments from the Fund in response to pressing questions from such recipients as to the eligible uses of payments.  This guidance will apply to the Tribal governments as well.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 6, 2020
Washington, D.C.

Daniel Kowalski
Counselor to the Secretary
United States Department of the Treasury
1500 Pennsylvania Ave NW

Washington, D.C. 20220