UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS, et al., ) ) ) ) Plaintiffs, ) ) v. ) ) STEVEN MNUCHIN, in his official capacity ) as Secretary of the Treasury, ) ) Defendant. ) ) | Case No. 20-cv-01136 (APM) |

**MEMORANDUM OPINION**

I.

This matter is once again before the court on a motion for preliminary injunction. Plaintiffs are Indian tribes that seek, for a second time, to compel Secretary of the Treasury Steven Mnuchin to allocate undistributed funds appropriated by Congress under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat 281 (2020) ("CARES Act"), to aid Tribal governments in combating the devastating impacts of the COVID-19 pandemic. Under Title V of the CARES Act, Congress set aside $8 billion for Tribal governments, 42 U.S.C. § 801(a)(2), and directed the Secretary to distribute such funds "not later than 30 days after March 27, 2020," that is, by April 26, 2020, *id.* § 801(b)(1). On May 11, 2020—16 days after the CARES Act's statutory deadline—the court denied Plaintiffs' first request for injunctive relief. *See Agua Caliente Band of Cahuilla Indians v. Mnuchin*, Case No. 20-cv-01136 (APM), 2020 WL 2331774 (D.D.C. May 11, 2020). The court found that "Plaintiffs . . . [had] not carried their burden to show that the Secretary's delay thus far is so egregious as to warrant mandamus relief today." *Id.* at *1. The court so held, in part, because only six days earlier—May 5, 2020—the Secretary had begun to

distribute 60% of the $8 billion and had announced steps to gather information and determine a formula for distributing the remaining 40% of funds. *See id.* at *2–3. The court warned, however, that the denial of Plaintiffs' motion "does not mean the Secretary enjoys an indefinite period to carry out Congress' command. . . . [S]hould the Secretary's delay verge on doubling the time Congress mandated to fully disburse Title V funds to Tribal governments, then the question of egregiousness becomes a closer one than it is today." *Id.* at *8.

On June 5, 2020—39 days after the congressional deadline lapsed—Plaintiffs filed the motion that is now before the court. *See* Pls.' Renewed Mot. for Prelim. Inj., ECF No. 37. Seven days later—on June 12, 2020—the Secretary began to distribute the remaining 40% of emergency relief, but withheld $679 million, or roughly 8.5% of Title V funds, due to a recently filed litigation, *Prairie Band Potawatomi Nation v. Mnuchin*, 20-cv-1491 (APM), which challenges the methodology used by the Secretary to distribute the first tranche of Title V funds, *see* Def.'s 6/12/2020 Status Report, ECF No. 39. The Secretary withheld the $679 million "'to resolve any potentially adverse decision in litigation' over Defendant's methodology for calculating disbursements from CARES Act appropriation for Tribal governments." *Id.* at 1. The Secretary did so even though the court had ruled the prior day, June 11, 2020, that the Prairie Band Plaintiffs were not entitled to enjoin the Secretary's final emergency relief payments, because his first-tranche allocation determination was a discretionary act that is not judicially reviewable under the Administrative Procedure Act. *See* Mem. Op. and Order, *Prairie Band Potawatomi Nation v. Mnuchin*, 20-cv-1491 (APM), ECF No. 22 [hereinafter *Prairie Band* Mem. Op.], at 2–3. Thus, at present, there is no court order that prevents the Secretary from releasing the remaining $679

million in Title V funds to Tribal governments.[1]  That amount is being withheld of the Secretary's own accord.

II.

In assessing Plaintiffs' initial motion, the court considered the six-factor test for resolving claims of unreasonable agency delay set forth in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984), and concluded that, despite missing the congressionally imposed 30-day deadline, the Secretary's delay in making Title V payments was not egregious and therefore did not warrant court intervention, *see Agua Caliente Band*, 2020 WL 2331774, at *5–8.  Plaintiffs therefore had not demonstrated a likelihood of success on the merits. *See id.*  Since that initial motion, three relevant facts have changed.  First, more time has passed. The Secretary has now taken more than twice as much time as Congress directed to distribute *all* CARES Act funds.  Congress instructed the Secretary to make payments within 30 days; as of today, the Secretary is at 80 days and counting.  Second, the Secretary has distributed most of the emergency relief but not all of it.  He continues to withhold $679 million "to resolve any potentially adverse decision" in the *Prairie Band* matter.  Def.'s 6/12/2020 Status Report at 1.  And, third, Plaintiffs in this case have received (or soon will receive) most of the money to which they are entitled, but again not all, because of the Secretary's withholding.

These new facts alter the court's balancing of the *TRAC* factors.  The passage of now 50 days beyond the congressional deadline—marking over twice as long as Congress intended for distribution of all CARES Act funds—weighs in favor of finding unreasonable delay.  As the court previously observed, the length of the agency's delay is the most important of the *TRAC* factors,

---

[1] The Secretary has properly withheld payments designated for Alaska village and regional corporations consistent with the court's preliminary injunction issued in *Confederated Tribes of the Chehalis Reservation v. Mnuchin*, Case No. 20-cv-1136 (APM), 2020 WL 1984297 (D.D.C. Cir. April 27, 2020).

*see* 2020 WL 2331774, at *6, *see also In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012), and longer delays are less tolerable when public health considerations are at stake, *see Agua Caliente Band* at *7 (citing *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984)). Here, public health considerations are at their zenith. As the court previously observed, "the COVID-19 pandemic presents a national health emergency that is without precedent in modern times." *Agua Caliente Band* at *1. Continued delay in the face of an exceptional public health crisis is no longer acceptable.

The court acknowledges the Secretary's efforts to date to distribute more than 90% of the $8 billion appropriated by Congress, and to do so in a fair and equitable manner. But the Secretary's withholding of $679 million "to resolve any potentially adverse decision in litigation," Def.'s 6/12/2020 Status Report at 1, simply cannot be justified. For one, it is not clear what authority under the CARES Act the Secretary possesses to make such a withholding. The CARES Act directs the Secretary to determine amounts to be paid to Tribal governments "in such manner as the Secretary determines appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal year 2020 are distributed to Tribal governments." 42 U.S.C. § 801(c)(7). The Secretary already has "determined" the amounts that should be paid to each Tribal government. *See* U.S. DEP'T OF TREASURY, Coronavirus Relief Fund Allocations to Tribal Governments (June 12, 2020).[2] His obligation now is to distribute those funds. *See* 42 U.S.C. § 801(b)(1) ("[N]ot later than 30 days after March 27, 2020, the Secretary shall pay each . . . Tribal government . . . the amount determined . . . ."). The CARES Act does not grant him the discretion to do otherwise.

Nor is the Secretary's initial allocation at genuine risk of being overturned or modified through litigation. The court already has held that the Supreme Court and Circuit precedent

---

[2] Available at https://home.treasury.gov/system/files/136/Tribal-Allocation-Methodology-for-Second-Distribution.pdf.

squarely foreclose judicial review of the Prairie Band Potawatomi Nation's challenge to the Secretary's discretionary choice of the population data he used to allocate the first tranche of CARES Act funds. *See Prairie Band* Mem. Op. at 2–3 (citing *Lincoln v. Vigil*, 508 U.S. 182 (1993), *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (2002), and *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 642 (D.C. Cir. 2020)). Further litigation in that matter is highly unlikely to cause the Secretary to revisit his first-tranche allocation methodology. Moreover, the amount withheld by the Secretary far exceeds the amount at stake in the *Prairie Band* matter. The plaintiff in that case claims underpayment of $7.65 million, *see Prairie Band* Mem. Op. at 1–2, and has not moved for class certification, yet the Secretary has held in reserve nearly 90 times the amount in dispute. The Secretary's injection of further delay into processing the remaining Title V payments is grossly disproportionate to the litigation exposure he fears.

Finally, the Secretary's unilateral withholding will result in even more delay, and for an unknown period of time. The Secretary intends to withhold funds until final resolution of the *Prairie Band* matter, including on appellate review. *See* Draft 6/15/2020 Status Conf. Tr. at 10.[3] Such resolution easily could add months to the timetable for a final distribution. Additionally, the Secretary's withholding only invites other dissatisfied Indian tribes to bring their own challenges to the Secretary's allocation decisions. More litigation will only lead to more delay—a result that the court cannot countenance in the face of a pandemic.

Accordingly, the court now finds that Plaintiffs have demonstrated a likelihood of success on the merits of their Administrative Procedure Act unreasonable-delay claim.

---

[3] The Prairie Band Potawatomi Nation appealed the court's denial of its motion for preliminary relief in the afternoon of June 15, 2020, after the hearing held on Plaintiffs' motion in this case. *See* Notice of Appeal, *Prairie Band Potawatomi Nation v. Mnuchin*, 20-cv-1491 (APM), ECF No. 26. As the Order accompanying this Memorandum Opinion reflects, the Secretary in his discretion may withhold $7.65 million, if the Prairie Band Potawatomi Nation seek expedited review before the D.C. Circuit.

III.

The remaining equitable relief factors favor an order compelling the Secretary to distribute the remaining Title V funds.  Plaintiffs will suffer irreparable harm in the absence of an injunction.  As noted, the Secretary's present intention is to withhold $679 million in Title V funds until the *Prairie Band* matter is finally resolved.  Def.'s 6/12/2020 Status Report at 1.  Such an indefinite wait will result in irreparable harm.  Congress plainly recognized the immediate need for emergency funds to assist Tribal governments in addressing the COVID-19 pandemic, as evidenced by the remarkably short 30-day deadline to distribute the aid.  *See* 42 U.S.C. § 801(b)(1).  Each day that passes in which Plaintiffs have not received their full allotment of funds impairs their capacity to respond to the crisis.  *See Agua Caliente Band*, 2020 WL 2331774, at *7 (citing Plaintiffs' affidavits).

The Secretary faults Plaintiffs for not providing current information about how their portion of the withheld monies will adversely impact them, but that criticism is misplaced in two respects.  First, the Secretary announced that he would be withholding the $679 million *after* Plaintiffs filed the present motion, so Plaintiffs have not had a genuine opportunity to respond to this new information.  *See* Def.'s 6/12/2020 Status Report.  And, second, the Secretary demands too much in the present health crisis.  Congress made a policy judgment that Tribal governments are in dire need of emergency relief to aid in their public health efforts and imposed an incredibly short time limit to distribute those dollars.  Tribal governments therefore are presumed already to be suffering great harm, as confirmed by Plaintiffs' affiants, who have explained that they have been forced to shut down revenue-producing operations while also incurring new costs to respond to the pandemic, with the resulting reduction of "government services putting the health and safety of tribal members at substantial risk." Affidavit of Ryan Ortiz, ECF No. 20, ¶ 11.  Considering

the public health challenges presented by the COVID-19 pandemic, the damage done by further delay cannot be fully cured by later remedial action, rendering Plaintiffs' harm irreparable.  *Cf. Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (finding irreparable harm from risk of infection and possible death due to delayed treatment from the reduction of hospital beds); *Kildare v. Saenz*, 325 F.3d 1078, 1083 (9th Cir. 2003) (explaining that "back payments cannot erase either the experience or the entire effect of several months" of deprivation of necessary resources (internal quotations marks and citation omitted)).  "The risk to human life need not be a certainty to justify expedition," particularly where the "very purpose of the governing Act is to protect those lives."  *Public Health Citizen Research Group v. Auchter*, 702 F.2d at 1160, 1157–58 & n.26 (D.C. Cir. 1983).

Finally, the balance of equities and the public interest favor injunctive relief.  The court reiterates what it said in denying the *Prairie Band* Plaintiff's motion for injunctive relief: "[I]t would be patently unfair to make Tribal governments wait any longer to receive the remaining CARES Act funds."  *Prairie Band* Mem. Op. at 4.  The 80 days they have waited, when Congress intended receipt of emergency funds in less than half that time, is long enough.  The equities and the public interest favor immediate disbursement of the remaining Title V funds.

IV.

For the foregoing reasons, Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 37, is granted.  A separate Order accompanies this Memorandum Opinion.

Dated: June 15, 2020

Amit P. Mehta
United States District Court Judge